**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| CONTENTGUARD HOLDINGS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 2:15-CV-128-JRG |
| | § | |
| DIRECTV, LLC, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff ContentGuard Holdings, Inc.'s Opening Claim Construction Brief (Dkt. No. 17) ("Opening Brief"), Defendant DirecTV, LLC's Responsive Claim Construction Brief (Dkt. No. 23) ("Responsive Brief"), and Plaintiff's Reply (Dkt. No. 24) ("Reply Brief").

The Court held a claim construction hearing on August 3, 2015.

**Table of Contents**

I. BACKGROUND................................................................................................ 2

II. LEGAL PRINCIPLES ................................................................................... 2

III. CONSTRUCTION OF AGREED TERMS .................................................. 6

IV. CONSTRUCTION OF DISPUTED TERMS ................................................ 7

    A. "label representing the content of a digital work" ................................................ 7

    B. "before the content is prepared in digital form"................................................. 11

    C. "association between the digital work and the label" ......................................... 13

    D. "protected electronic association between the label and the usage rights"........................ 16

    E. "future appropriation of content" ...................................................................... 18

    F. "generating"....................................................................................................... 21

V. CONCLUSION.............................................................................................. 23

## I.  BACKGROUND

Plaintiff brings suit alleging infringement of United States Patent No. 7,725,401 ("the

'401 Patent"), as well as U.S. Patent No. 8,393,007, U.S. Patent No. 8,370,956, U.S. Patent No.

7,523,072, U.S. Patent No. 7,269,576, U.S. Patent No. 6,963,859, U.S. Patent No. 7,225,160, and

U.S. Patent No. 7,774,280.  Only the '401 Patent is the subject of this Claim Construction

Order.[1] (Opening Brief, Ex. A.)

The '401 Patent is titled "Method and Apparatus for Establishing Usage Rights for

Digital Content to Be Created in the Future" and issued on May 25, 2010.  In general, the '401

Patent relates to digital rights management.  The Abstract states:

> Usage rights for a digital work are established prior to creation of the
> corresponding content.  The rights can be associated with the content after the
> content is created.  A content creation, such as a video recorder or a still camera,
> device can store labels of the rights and can associate usage rights with content in
> real time as the content is created.

Plaintiff submits that the '401 Patent is related to the patents previously construed by the

Court in the Amazon Order.

## II.  LEGAL PRINCIPLES

It is understood that "[a] claim in a patent provides the metes and bounds of the right

which the patent confers on the patentee to exclude others from making, using or selling the

protected invention."  *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed.

Cir. 1999).  Claim construction is clearly an issue of law for the court to decide.  *Markman v.

Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370

(1996).

---

[1] The other patents-in-suit have previously been addressed by the Court in *ContentGuard Holdings, Inc. v. Amazon.com, Inc., et al.*, No. 2:13-CV-1112, Dkt. No. 459, 2015 WL 1289321 (E.D. Tex. Mar. 20, 2015) ("Amazon Order").

To ascertain the meaning of claims, courts look to three primary sources: the claims, the specification, and the prosecution history. *Markman*, 52 F.3d at 979. The specification must contain a written description of the invention that enables one of ordinary skill in the art to make and use the invention. *Id.* A patent's claims must be read in view of the specification, of which they are a part. *Id.* For claim construction purposes, the description may act as a sort of dictionary, which explains the invention and may define terms used in the claims. *Id.* "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000).

Nonetheless, it is the function of the claims, not the specification, to set forth the limits of the patentee's invention. Otherwise, there would be no need for claims. *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1388 (Fed. Cir. 1992). Although the specification may indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than the embodiments. *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

This Court's claim construction analysis is substantially guided by the Federal Circuit's decision in *Phillips v. AWH Corporation*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc). In *Phillips*, the court set forth several guideposts that courts should follow when construing claims. In particular, the court reiterated that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." 415 F.3d at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To that end, the words

used in a claim are generally given their ordinary and customary meaning.  *Id.*  The ordinary and customary meaning of a claim term "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."  *Id.* at 1313.  This principle of patent law flows naturally from the recognition that inventors are usually persons who are skilled in the field of the invention and that patents are addressed to, and intended to be read by, others skilled in the particular art.  *Id.*

Despite the importance of claim terms, *Phillips* made clear that "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."  *Id.*  Although the claims themselves may provide guidance as to the meaning of particular terms, those terms are part of "a fully integrated written instrument."  *Id.* at 1315 (quoting *Markman*, 52 F.3d at 978).  Thus, the *Phillips* court emphasized the specification as being the primary basis for construing the claims.  *Id.* at 1314-17.  As the Supreme Court stated long ago, "in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims."  *Bates v. Coe*, 98 U.S. 31, 38 (1878).  In addressing the role of the specification, the *Phillips* court quoted with approval its earlier observations from *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998):

> Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim.  The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.

*Phillips*, 415 F.3d at 1316.  Consequently, *Phillips* emphasized the important role the specification plays in the claim construction process.

The prosecution history also continues to play an important role in claim interpretation. Like the specification, the prosecution history helps to demonstrate how the inventor and the United States Patent and Trademark Office ("PTO") understood the patent.  *Id.* at 1317.  Because the file history, however, "represents an ongoing negotiation between the PTO and the applicant," it may lack the clarity of the specification and thus be less useful in claim construction proceedings.  *Id.*  Nevertheless, the prosecution history is intrinsic evidence that is relevant to the determination of how the inventor understood the invention and whether the inventor limited the invention during prosecution by narrowing the scope of the claims.  *Id.*; *see Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) (noting that "a patentee's statements during prosecution, whether relied on by the examiner or not, are relevant to claim interpretation").

*Phillips* rejected any claim construction approach that sacrificed the intrinsic record in favor of extrinsic evidence, such as dictionary definitions or expert testimony.  The *en banc* court condemned the suggestion made by *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), that a court should discern the ordinary meaning of the claim terms (through dictionaries or otherwise) before resorting to the specification for certain limited purposes. *Phillips*, 415 F.3d at 1319-24.  According to *Phillips*, reliance on dictionary definitions at the expense of the specification had the effect of "focus[ing] the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent."  *Id.* at 1321. *Phillips* emphasized that the patent system is based on the proposition that the claims cover only the invented subject matter.  *Id.*

*Phillips* does not preclude all uses of dictionaries in claim construction proceedings. Instead, the court assigned dictionaries a role subordinate to the intrinsic record.  In doing so, the court emphasized that claim construction issues are not resolved by any magic formula.  The court did not impose any particular sequence of steps for a court to follow when it considers disputed claim language.  *Id.* at 1323-25.  Rather, *Phillips* held that a court must attach the appropriate weight to the intrinsic sources offered in support of a proposed claim construction, bearing in mind the general rule that the claims measure the scope of the patent grant.

## III.  CONSTRUCTION OF AGREED TERMS

The Court hereby adopts the following agreed constructions:

| Term | Agreed Construction |
|---|---|
| "digital work" | plain meaning |
| "content" | "the digital information (i.e., raw bits) representing a digital work" |
| "renderable" | The parties agree that "render[ing]" means "present[ing] a digital work, such as by playing a digital movie, playing digital music, playing a video game, running a computer program, displaying a document on a display, or printing on paper." |
| "usage rights" | "indications that are attached, or treated as attached, to [a digital work / digital content / content / a digital document] and that indicate the manner in which the [digital work / digital content / content / digital document] may be used or distributed as well as any conditions on which use or distribution is premised" |
| "manner of use" | "a way in which [a digital work / digital content / content / a digital document] may be used, as contrasted with a condition that must be satisfied before such use is allowed" |

| "repository" | "a trusted system in that it maintains physical, communications, and behavioral integrity in the support of usage rights"<br><br>*trusted*:  "maintains physical, communications, and behavioral integrity in the support of usage rights"<br><br>*physical integrity*:  "preventing access to information in a repository by a non-trusted system"<br><br>*communications integrity*:  "only communicates with other devices that are able to present proof that they are trusted systems, for example, by using security measures such as encryption, exchange of digital certificates, and nonces"<br><br>*behavioral integrity*:  "requiring software to include a digital certificate in order to be installed in the repository" |
|---|---|

(Dkt. No. 14, 5/11/2015 Joint Claim Construction and Prehearing Statement, at 2.)

## IV.  CONSTRUCTION OF DISPUTED TERMS

### A.  "label representing the content of a digital work"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary beyond construing "content" and "digital work." | "placeholder that identifies the content of a digital work"[2] |

(Dkt. No. 25, Ex. B.)  The parties submit that this disputed term appears in Claim 1.  (*Id.*)

(1)  The Parties' Positions

Plaintiff argues that Defendant's proposed construction "import[s] limitations from embodiments described in the specification," and Plaintiff submits that "the '401 Patent does not equate 'label' with 'placeholder.'"  (Opening Brief, at 4.)  Plaintiff further argues that "[w]hile the specification does disclose the concept of 'identification,' it does so only to suggest one possible embodiment, which relates to identifying 'the work,' not its 'content.'"  (*Id.* at 5 (citing '401 Patent at 3:49-52).)

---

[2] Defendant previously proposed: "placeholder that includes an identification of the content of a digital work."  (Dkt. No. 14, Ex. B, at 1.)

Defendant responds that "[t]he claim language and the specification establish that the 'label' as used in claim 1 is a 'placeholder.'"  (Responsive Brief, at 3.)  Defendant argues that, "[a]s allowed, claim 1 covers the situation in which the content does not yet exist in digital form. In this circumstance, as explained by the specification, the label is a placeholder."  (*Id.* at 4.) Further, Defendant argues, "the label, to 'represent' the content, must 'identify' that content." (*Id.*).

Plaintiff replies that "in each of the[] four instances [of 'placeholder' cited by Defendant], the '401 Patent uses permissive language and expressly notes that it is only discussing exemplary embodiments. . . . In contrast, 'label' is used well over 100 times throughout the '401 Patent— the vast majority outside the context of any discussion of 'placeholder.'"  (Reply Brief, at 2.) Plaintiff also argues that "there is no indication that the label is necessarily replaced by something else, as suggested by the term 'placeholder.'"  (*Id.* at 3.)

(2)  Analysis

Claim 1 recites (emphasis added):

1.  A method for creating a digital work, said digital work having content which is a renderable portion of the digital work and usage rights specifying a manner of use for the content, said digital work being adapted to be used within a system of repositories for enforcing usage rights so that the content can be used only in accordance with the manner of use specified by the usage rights, the method comprising:
    generating, by a programmed computing device, a computer readable *label representing the content of a digital work* before the content is prepared in digital form;
    generating, by a programmed computing device, usage rights specifying a manner of use of the content that is enforceable by a repository before the content is prepared in digital form;
    creating at least one instance of a protected electronic association between the *label* and the usage rights before the content is prepared in digital form;
    preparing, by a programmed computing device, the content in a cryptographically protected digital form; and

creating an association between the digital work and the *label* to thereby
create a digital work which is adapted to be used only in accordance with the
manner of use specified by the usage rights associated with the *label*.

Defendant urges that "[b]ecause the 'label' is brought into existence before the content it

represents is prepared in digital form, it necessarily follows that the label serves as a

'placeholder' for the yet-to-be-prepared digital content."  (Responsive Brief, at 3.)

The specification discloses:

Since the digital content 260 for the license does not yet exist, *label* 240 is created
to act as a *placeholder* for the future content.

\* \* \*

In the preferred embodiments, the *label is a placeholder*, the label need not have
to have specific content or usage rights.  The label can be a *placeholder* for both
usage rights and content.  Or for just one of these two.  For example, the *label can
be a file with a pointer (or empty data portion)* for three things: content, usage
rights and an association means.  The association means can be supplied first.
The other two pieces of information can be supplied subsequently in any order.
Conventionally, content is created first and then rights are associated with the
content.  With the invention, an association of content to rights can be created
before the content is even created.

'401 Patent at 6:28-30 & 9:15-26 (emphasis added); *see id.* at 6:10-12 ("The label represented by

step 100 in FIG. 1 may serve as a reference to another work.  *The label in this case would serve*

*as a placeholder* for future content.").

On balance, these disclosures suggest that the word "placeholder" is narrower than the

term "label."  *See Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 807 (Fed. Cir. 2007) (noting that

the patentees "could have used the word 'perpendicular,' as they did in discussing their preferred

embodiment.  Instead, they chose a different term [('transverse')] that implies a broader scope").

Further, as to the disclosures cited by Defendant that purportedly demonstrate that a label

"identifies" the content of a work, such identification is a particular feature of preferred

embodiments that should not be imported into the claims.  *See* '401 Patent at 6:58-66 & 7:66-

9

8:5; *see also Phillips*, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments").

Also of note, the specification discloses embodiments where a label is still present after the preparation of the content.  *See* '401 Patent at 3:2-3 ("securing the content and the label") & 4:8-12 ("The usage rights label can be encapsulated with or attached to the content whereby copies of the digital work will also carry the usage rights label.  Alternatively, the label can be stored separately from the content but be associated through flags, calls, or the like."); *see also id.* at 6:49-50 ("digital content pointed to by the label").

The Court therefore hereby expressly rejects Defendant's proposed construction.  No further construction is necessary.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) ("Unlike *O2 Micro*, where the court failed to resolve the parties' quarrel, the district court rejected Defendants' construction.").

The Court accordingly hereby construes **"label representing the content of a digital work"** to have its **plain meaning** apart from the above-noted agreed-upon constructions of "content" and "digital work."

**B. "before the content is prepared in digital form"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| No construction necessary beyond construing "content." | "before the content is first expressed as digital information (i.e., raw bits) representing a digital work"[3] |

(Dkt. No. 25, Ex. B.)  The parties submit that this disputed term appears in Claim 1.  (*Id.*)

(1)  The Parties' Positions

Plaintiff argues that Defendant's proposal "replac[es] the claim[']s[] straightforward language with a wordier and more confusing phrase, and also add[s] a new 'first expressed' limitation to the claim."  (Opening Brief, at 6.)

Defendant responds that its position "is exactly the same as the position taken by the patentee during prosecution."  (Responsive Brief, at 6.)  Defendant submits that "[t]o overcome [a] rejection [during prosecution], the patentee narrowed the claim language to require that the label be generated 'before the content is prepared in digital form.'"  (*Id.* at 6-7.)

Plaintiff replies that "[Defendant's] proposed limitation is contradicted by the specification itself, and [Defendant's] reliance on the prosecution history is misplaced."  (Reply Brief, at 7.)

At the August 3, 2015, hearing, Defendant reiterated that during prosecution the patentee disclaimed embodiments involving pre-existing digital content.  *See* '401 Patent at 1:23-25. Plaintiff responded that the prior art reference at issue related to watermarking, for example, which essentially does not change the content of a work.

---

[3] Defendant previously proposed: "before the content is first expressed as digital information (i.e., raw bits) representing a digital work, regardless of later processing of the content, such as compression or sampling."  (Dkt. No. 14, Ex. B, at 2.)

(2)  Analysis

Claim 1 recites, in relevant part: "generating, by a programmed computing device, a computer readable label representing the content of a digital work *before the content is prepared in digital form*."

The specification explains that "an item of content already in digital form can be content that has not been created where a new digital instantiation of the content is created."  '401 Patent at 1:23-25.  Also of note, the specification discloses an embodiment in which the digital content exists but is not made available until a future date.  *See id.* at 8:30-46.

The prosecution history regarding the "Medina" reference (United States Patent No. 6,959,288), cited by Defendant, contains no definitive statement to the contrary.  On one hand, the patentee stated that "[t]he creation of a computer readable label prior to preparing content in digital form permits usage rights to be assigned to digital content that does not yet exist and facilitates business models that are set forth in the specification."  (Responsive Brief, Ex. A, 12/22/2007 Amendment, at 9.)  On the other hand, the patentee merely explained that compressing an item of content, for example, is not the type of preparation contemplated by the disputed term.  (*See id.*)

Thus, whereas the prosecution history and the disputed term refer to content that has not yet been prepared, nothing in the prosecution history cited by Defendant warrants interpreting "before the content is prepared" as meaning that the content has never before been expressed as digital information.  *See Omega Eng'g v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on *definitive* statements made during prosecution.") (emphasis added); *id.* at 1325-26 ("[F]or prosecution disclaimer to attach,

our precedent requires that the alleged disavowing actions or statements made during prosecution be both *clear and unmistakable*.") (emphasis added); *id.* at 1330 ("[T]here is more than one reasonable basis for the amendment, rendering the intent underlying the amendment ambiguous and thus negating the possibility of the disclaimer being unmistakable.").

On balance, Defendant has not adequately supported its proposal of "first expressed." Instead, as Plaintiff urged at the August 3, 2015, hearing, the disputed term primarily merely sets forth relative ordering of steps because another claim limitation recites "preparing, by a programmed computing device, the content in a cryptographically protected digital form." *See, e.g., Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008) ("As a general rule the claim is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order."). The Court therefore hereby expressly rejects Defendant's proposed construction. No further construction is necessary. *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Finjan*, 626 F.3d at 1207.

The Court accordingly hereby construes **"before the content is prepared in digital form"** to have its **plain meaning** apart from the above-noted agreed-upon construction of "content."

### C.  "association between the digital work and the label"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary. | "a correspondence created between the digital work and the label such that the label will represent the digital work"[4] |

(Dkt. No. 25, Ex. B.)  The parties submit that this disputed term appears in Claim 1.  (*Id.*)

---

[4] Defendant previously proposed: "a correspondence created between the digital work and the label so the label will be applied to the digital work."  (Dkt. No. 14, Ex. B, at 3.)

<u>(1)  The Parties' Positions</u>

Plaintiff argues that Defendant's proposal "would replace the straightforward claim language with wordier and more confusing language that would not benefit the jury."  (Opening Brief, at 8.)  In particular, Plaintiff urges that "[g]iven that the specification does not provide a true definition for 'associated,' there is no reason for the Court to embrace a construction that is different from its ordinary meaning."  (*Id.* at 8-9.)

Defendant responds that the specification "consistently defin[es] 'associated' as a 'correspondence,'" and "the 'correspondence' allows the label to represent the digital work when the 'label' is applied."  (Responsive Brief, at 8.)

Plaintiff replies that "[w]hile a patentee may act as its own lexicographer, providing multiple, different 'definitions' does not reasonably show a clear and deliberate intent to alter the plain and ordinary meaning of the term in question."  (Reply Brief, at 4.)

<u>(2)  Analysis</u>

The patentee is free to be his own lexicographer, but any special definition given to a word must be clearly set forth in the specification.  *See Intellicall*, 952 F.2d at 1388; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("Although words in a claim are generally given their ordinary and customary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is *clearly* stated in the patent specification or file history.") (emphasis added); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (similar).

The specification twice explicitly describes "the term 'associating'" as having a particular meaning:

14

In step 140, the content is created.  Of course, this step can be accomplished by another party.  However the content is created, the salient point is that the content somehow comes into existence after rights are assigned for it.  The usage rights label can be encapsulated with or attached to the content whereby copies of the digital work will also carry the usage rights label.  Alternatively, the label can be stored separately from the content but be associated through flags, calls, or the like.  Therefore, *the term "associated" as used herein refers broadly to creating a correspondence between the content and the label so the label will be applied to the content*.  Once the usage rights label is associated with the content, the content can be secured using the key generated in step 110.  The digital content can be secured through any form of encryption or other known technique.  For example pretty good privacy (PGP) encryption procedures can be used.

'401 Patent at 4:4-19 (emphasis added).

In step 540, the content is created.  Of course, this step can be accomplished by another party.  However the content is created, the salient point is that the content somehow comes into existence after rights are assigned for it.  In this embodiment, the content is created in response to the request for content performed previously in step 530.  After the content is created, the label is associated with the content in step 550.  The label can be encapsulated with or attached to the content whereby copies of the digital work will also carry the label.  Alternatively, the label can be stored separately from the content but be associated through flags, calls, or the like.  Therefore, *the term "associated" as used herein refers broadly to creating a correspondence between the content and the label so the label will be applied to represent the content*.  Once the usage rights label is associated with the content, the content may or may not be secured using the key generated in step 510.  The digital content can be secured through any form of encryption or other known technique.  For example pretty good privacy (PGP) encryption procedures can be used.

*Id.* at 7:21-39 (emphasis added).

Plaintiff notes that these passages use the phrase "refers broadly," which Plaintiff urges signals a mere example, and Plaintiff argues that these definitions are inconsistent with one another.  At the August 3, 2015, hearing, Plaintiff further urged that these passages demonstrate that "association" is broader than "correspondence."

In some cases, particular language can lead to a finding that an apparent definition is not sufficiently clear, deliberate, and precise enough to warrant a narrowing construction.  *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1355-56 (Fed. Cir. 2003) (discussing

disclosure introduced by the phrase "as used herein" and noting that "the specification provides two alternative definitions for the term at issue").

On balance, however, "refers broadly" does not undermine the apparent lexicography, and the addition of the word "represent" in the second above-quoted definition does not amount to an inconsistency.  Instead, the context of the specification as a whole favors adopting the definition that does not include "represent," which appears to be an optional feature of the phrase "applied to the content."   *See* '401 Patent at 4:4-19 & 7:21-39; *see also id.* at 6:22-26 (disclosing several "means of associating the label").  The separate recital of "generating . . . a computer readable label *representing* the content of a digital work" reinforces this conclusion.  *Id.* at Cl. 1 (emphasis added).  Finally, the above-quoted use of the word "content" in the specification should be replaced with "digital work" in the construction because "digital work" is the phrase that appears in the disputed term rather than "content."

The Court therefore hereby construes **"association between the digital work and the label"** to mean **"correspondence between the digital work and the label so the label will be applied to the digital work."**

**D.  "protected electronic association between the label and the usage rights"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- |
| No construction necessary beyond construing "usage rights." | "an electronic correspondence, created between the usage rights and the label, that is secured from unauthorized user access such that the label will represent the usage rights"[5] |

---

[5] Defendant previously proposed: "a correspondence, created between the usage rights and the label, that is secured from unauthorized user access."  (Dkt. No. 14, Ex. B, at 2.)  In their responsive claim construction brief, Defendant added the phrase "such that the label will represent the usage rights" to the end of their proposal.  (Responsive Brief, at 9.)  At the August 3, 2015 hearing, Defendant added the word "electronic" to the beginning of their proposal.

(Dkt. No. 25, Ex. B.)  The parties submit that this disputed term appears in Claim 1.  (*Id.*)

(1)  The Parties' Positions

Plaintiff argues that "secured from unauthorized user access" "has no support in the specification," and Defendant's proposal "would replace 'association' with 'correspondence,' which is addressed . . . in the discussion of 'association between the digital work and the label.'" (Opening Brief, at 8.)

Defendant responds that construction is appropriate because "[t]he relevant language appears only in the claims of the patent, and the parties agree it has no commonly understood meaning in the art."  (Responsive Brief, at 9.)  Defendant incorporates-by-reference its argument as to the "association" term, addressed above.  (*Id.*)  Defendant also urges that "[t]he patent specification consistently discusses 'protection' by reference to 'encryption,' 'private keys,' and other similar techniques used to prevent unauthorized access."  (*Id.* at 10.)

Plaintiff replies that "[Defendant] has not suggested that the term 'protected' is being used in any way other than its ordinary meaning," and "terms that are readily understandable by a jury need not be construed."  (Reply Brief, at 7.)

(2)  Analysis

Defendant has not demonstrated that the words "protected" or "electronic" have any special meaning in the patent-in-suit so as to require construction.  *See* '401 Patent at 1:48-50, 1:58-60, 1:67-2:3, 2:36-39, 4:16-19, 7:5-6, 7:8-11 & 7:37-39.  In particular, Defendant has not shown that the word "secure" is any clearer or more appropriate than the word "protect," and Defendant has not shown any need to refer to "unauthorized access."  (*See id.*; *see also* Responsive Brief, Ex. E, *Webster's New World Dictionary of Computer Terms* 304 (1988); *Phillips*, 415 F.3d at 1321 ("heavy reliance on the dictionary divorced from the intrinsic evidence

risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification").)

Also of note, whereas Claim 1 recites "protected," dependent Claims 5 and 6 recite "secure" and "securing," which suggests that "protected" and "secured" are not used synonymously in the claims.  *See CAE Screenplates Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, we must presume that the use of . . . different terms in the claims connotes different meanings.").

The remainder of the disputed term should be construed consistent with the other "association" term discussed above.

The Court accordingly hereby construes **"protected electronic association between the label and the usage rights"** to mean **"protected electronic correspondence between the usage rights and the label so the label will be applied to the usage rights."**

## E.  "future appropriation of content"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| No construction necessary beyond construing "content."  Not indefinite. | Indefinite |

(Dkt. No. 25, Ex. B.)  The parties submit that this disputed term appears in Claim 15.  (*Id.*)

### (1)  The Parties' Positions

Plaintiff argues that this term is not indefinite because "[e]ach of the individual words has a definite meaning, and, taken together, the phrase itself also has a definite (and plain) meaning." (Opening Brief, at 9.)  Plaintiff also submits that during prosecution "the examiner explicitly examined the claims for indefiniteness issues, and expressed no concern with respect to the 'future appropriation of content' language."  (*Id.* at 9-10.)

Defendant responds that "a proper construction" of "wherein the content is a future appropriation of content for a distributor" "renders the claim without discernible scope and nonsensical." (Responsive Brief, at 12.) More specifically, Defendant argues that "claim 15 equates a thing, 'content,' with an 'act' of appropriation." (*Id.* at 13.)

Plaintiff replies: "A person of ordinary skill in the art would . . . understand to use the 'thing' form of 'appropriation' for Claim 15, rather than the 'act' form. This wholly eliminates [Defendant's] self-created problems of reconciling a 'thing' with an 'act.' In short, the patent claim refers to the content that is appropriated, not the act of appropriating the content." (Reply Brief, at 9.)

At the August 3, 2015, hearing, Defendant urged that because the disputed term requires performance of a future act, or preparation or protection of something that does not yet exist, the claim scope is not reasonably certain.

(2)  Analysis

The Supreme Court of the United States has "read [35 U.S.C.] § 112, ¶ 2 to require that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S.Ct. 2120, 2129 (2014). "A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (citations and internal quotation marks omitted), *abrogated on other grounds by Nautilus,* 134 S. Ct. 2120.

Claims 1 and 15 recites (emphasis added):

1. A method for creating a digital work, said digital work having *content* which is a renderable portion of the digital work and usage rights specifying a manner of

use for the *content*, said digital work being adapted to be used within a system of repositories for enforcing usage rights so that the *content* can be used only in accordance with the manner of use specified by the usage rights, the method comprising:

generating, by a programmed computing device, a computer readable label representing the *content* of a digital work before the *content* is prepared in digital form;

generating, by a programmed computing device, usage rights specifying a manner of use of the *content* that is enforceable by a repository before the *content* is prepared in digital form;

creating at least one instance of a protected electronic association between the label and the usage rights before the *content* is prepared in digital form;

*preparing, by a programmed computing device, the content in a cryptographically protected digital form*; and

creating an association between the digital work and the label to thereby create a digital work which is adapted to be used only in accordance with the manner of use specified by the usage rights associated with the label.

\* \* \*

15.  A method as recited in claim 1, wherein the *content* is a *future appropriation of content* for a distributor.

Defendant has not shown that the word "appropriation" necessarily refers to an "act" rather than a "thing."  (*See* Responsive Brief, at 13.)  Instead, the specification supports reading the word "appropriation" to encompass, for example, an allocation.  *See* '401 Patent at 8:30-47 ("The distributor is given only the number of individualized copies of the digital content that they are authorized to sell each month.").  Further, Claim 1 recites preparation of content and Claim 15 merely adds a limitation relating to restricted distribution of content.  On balance, Defendant has failed to demonstrate that the meaning of the disputed term is not "reasonabl[y] certain[]."  *Nautilus*, 134 S.Ct. at 2129.

The Court therefore hereby expressly rejects Defendant's indefiniteness argument.  No further construction is necessary.

The Court accordingly hereby construes **"future appropriation of content"** to have its **plain meaning** apart from the above-noted agreed-upon construction of "content."

**F. "generating"**

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain meaning. | "bringing into existence" |

(Dkt. No. 25, Ex. B.) The parties submit that this disputed term appears in Claim 1. (*Id.*)

<u>(1) The Parties' Positions</u>

Plaintiff argues that Defendant's proposal is "a further attempt to limit the claim elements 'association between the digital work and the label' and 'association between the label and the usage rights' to occur[r]ing before the content is 'first brought into existence,' and not also before 'new instantiations' of the content (as is expressly taught in the '401 patent as a preferred embodiment)." (Opening Brief, at 10.) Further, Plaintiff argues, "[Defendant's] references to dictionaries to provide a standard dictionary definition of the word 'generating' further shows there is no need for the Court to merely provide a standard dictionary definition for a term that is commonly used within the English language." (*Id.* at 11.)

Defendant responds that its proposed construction is consistent with dictionary definitions, the Court's constructions of "generating" in other cases, and Plaintiff's previous proposal in the present case. (Responsive Brief, at 11.) Defendant also submits that "the 'generating' terms are about bringing a 'label' and 'usage rights' into existence. Nothing in [Defendant's] proposed construction would limit 'content.'" (*Id.* at 12.)

Plaintiff replies that "[Defendant] appears to be arguing that the term 'generating' has a plain meaning," and Plaintiff argues that "no construction is required in this situation." (Reply Brief, at 9.) At the August 3, 2015, hearing, Plaintiff reiterated that it previously disclosed "bringing into existence" merely as an example.

(2)  Analysis

Claim 1 recites, in relevant part (emphasis added): "*generating*, by a programmed

computing device, a computer readable label representing the content of a digital work before the

content is prepared in digital form"; and "*generating*, by a programmed computing device, usage

rights specifying a manner of use of the content that is enforceable by a repository before the

content is prepared in digital form."

As a threshold matter, Plaintiff itself previously proposed: "Plain meaning: 'to bring into

existence.'"  (Responsive Brief, Ex. H, P.R. 4-2 Preliminary Claim Constructions, at 3 (citing

*Webster's II New College Dictionary* (2001)).)  Although Plaintiff's previous position may

perhaps be probative, Defendant has not demonstrated that Plaintiff's preliminary construction

gives rise to any estoppel or binding effect.

Defendant has also cited constructions of purportedly similar terms in other cases

involving different patents, but Defendant has not shown that constructions in unrelated cases are

relevant or should be considered.  *See O2 Micro Int'l Ltd. v. Sumida Corp.*, No. 2:03-CV-7, 2005

WL 6127302, at *3 (E.D. Tex. Mar. 8, 2005) ("[T]he court construes 'generate' in accordance

with its ordinary meaning—'to bring into existence.' Webster's Third International Dictionary,

1993."); *see also Personalized Media Communications LLC v. Zynga, Inc.*, No. 2:12-CV-68,

2013 WL 4630447, at *17 (E.D. Tex. Aug. 28, 2013) ("[T]he Court construes 'locally generated

image' to mean 'image brought into existence locally' and construes 'locally generated video

image' to mean 'video image brought into existence locally.'").

Defendant further cites general-purpose dictionary definitions.  (*See* Responsive Brief,

Ex. F, *Webster's Third New International Dictionary* (1986) ("generate: to bring into

existence"); *see also Id.* Ex. G, http://www.merriamwebster.com/dictionary/generate ("generate:

22

to bring into existence").)  Such definitions are of limited usefulness here, however, because the meaning of "generating" is sufficiently clear in light of the surrounding claim language.

The Court therefore hereby expressly rejects Defendant's proposed construction.  No further construction is necessary.  *See U.S. Surgical*, 103 F.3d at 1568; *see also O2 Micro*, 521 F.3d at 1362; *Finjan*, 626 F.3d at 1207.

The Court accordingly hereby construes **"generating"** to have its **plain meaning**.

## V.  CONCLUSION

The Court adopts the constructions set forth in this opinion for the disputed terms of the patents-in-suit.  The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

Within thirty (30) days of the issuance of this Memorandum Opinion and Order, the parties are hereby ORDERED, in good faith, to mediate this case with the mediator agreed upon by the parties.  As a part of such mediation, each party shall appear by counsel and by at least one corporate officer possessing sufficient authority and control to unilaterally make binding decisions for the corporation adequate to address any good faith offer or counteroffer of settlement that might arise during such mediation.  Failure to do so shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate.

**So ORDERED and SIGNED this 6th day of August, 2015.**


_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE